**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Carol R. Johnson,

        Plaintiff,

    v.

Mutual of Omaha Life Insurance
Company,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 13-1708 ADM/SER

_____

Mark Nolan, Esq., Nolan Thompson & Leighton, Bloomington, MN, on behalf of Plaintiff.

Jeffrey W. Thone, Esq., and James T. Keig, Esq., Stephenson, Sanford & Thone, PLC, Wayzata, MN, on behalf of Defendant.

_____

**I.  INTRODUCTION**

On June 17, 2014, the undersigned United States District Judge heard oral argument on Plaintiff Carol R. Johnson's ("Johnson") and Defendant Mutual of Omaha Life Insurance Company's ("United") cross-motions for summary judgment [Docket Nos. 17, 23].[1]  The parties dispute whether Johnson was wrongfully denied short-term and long term-disability coverage. For the reasons set forth below, Johnson's motion for summary judgment is denied and United's motion for summary judgment is granted in part and denied in part.

**II.  BACKGROUND**

**A.  The Policies**

Plaintiff Johnson began working for LANDesk Software, Inc. ("LANDesk") on

---

[1] Mutual of Omaha Life Insurance Company is the parent corporation of United of Omaha Life Insurance Company.  The relevant policies were both issued by United; therefore, the Court will simply refer to Defendant as "United."

November 22, 2010 as a territory manager.  Jeffrey W. Thone Aff. [Docket No. 20] Ex. A.

Administrative Record ("AR")  535.[2]  Johnson participated in LANDesk's employee group

welfare benefit plans, United's Group Short-Term Disability insurance policy (the "STD

Policy"), AR 1-51, and a Long-Term Disability insurance policy (the "LTD Policy"), AR 52-

114.

The policies each provide:

AUTHORITY TO INTERPRET POLICY

The Policyholder [LANDesk] has delegated to Us [United] the discretion to
determine eligibility for benefits and to construe and interpret all terms and
provisions of the Policy.  Benefits under the Policy will be paid only if We [United]
decide, after exercising Our discretion, that the Insured Person is entitled to them.
In making any decision, We may rely on the accuracy and completeness of any
information furnished by the Policyholder, an Insured Person or any other third
parties.

AR 6, 42, 57.

**1.  The STD Policy**

The STD Policy provides for a maximum weekly payment of $1,000 for a maximum

period of 12 weeks for a continuous period of disability.  AR 22.

The STD Policy defines several terms:

**Disability** and **Disabled** means that because of an Injury or Sickness, a significant
change in Your mental or physical functional capacity has occurred in which:
  (a)      during the Elimination Period, You are prevented from performing
           the Material Duties of Your Regular Job (on a part-time or full-time
           basis) or are unable to work Full-Time; and
  (b)      after the Elimination Period, You are:
           (1)      prevented from performing the Material Duties of Your
                    Regular Job (on a part-time or full-time basis) or are unable

---

[2] All citations to "AR" refer to "AR CJOHNSON" Bates page numbers of the documents
in the administrative record.  The Administrative Record was submitted under seal.

       to work Full-Time; and

  (2)  unable to generate Current Earnings which exceed 99% of Your Weekly Earnings due to that same Injury or Sickness.

Disability is determined relative to Your ability or inability to work. It is not determined by the availability of a suitable position with Your employer.

AR 43.

  **Sickness** means a disease, disorder or condition, including pregnancy, for which you are under the care of a Physician.  Disability must begin while you are insured under the Policy.  Sickness does not include elective cosmetic surgery or procedures.

AR 45.

  **Regular Care** means:

  (a)  You visit a Physician as frequently as is medically required, according to standard medical practice, to effectively manage and treat Your disabling condition; and

  (b)  You receive Appropriate Care and Treatment.

AR 45.

  **Appropriate Care and Treatment** means medical care and treatment that meet all of the following:

  (a)  It is received from a Physician whose expertise, medical training and clinical experience are suitable for treating Your Injury or Sickness;

  (b)  It is Medically Necessary;

  (c)  It is consistent in type, frequency and duration of treatment with relevant guidelines based on national medical research or published by health care organizations and government agencies;

  (d)  It is consistent with the diagnosis of Your condition; and

  (e)  Its purpose is to improve Your medical condition and thereby aid in Your ability to return to work.

AR 43.

  **Physician** means any of the following licensed practitioners:

  (a)  a doctor of medicine (MD), osteopathy (DO), podiatry (DPM) or chiropractic (DC);

  (b)  a licensed doctoral clinical psychologist; or

  (c)  where required by law, any other licensed practitioner who is acting within the scope of his/her license.

AR 44.

**Medically Necessary** means care that is ordered, prescribed or rendered by a Physician or Hospital and is determined by Us, or a qualified party or entity selected by Us, to be:

    (a)    provided for the diagnosis or direct treatment of Your Injury or Sickness;

    (b)    appropriate and consistent with the symptoms and findings or diagnosis and treatment of Your Injury or Sickness; and

    (c)    provided in accordance with generally accepted professional standards and/or medical practice.

AR 44.

## 2. The LTD Policy

The LTD Policy provides that if, "while insured under this provision, You become

Disabled due to Injury or Sickness, We will pay the Monthly Benefit shown in the Schedule."

AR 85.

The LTD Policy includes the following relevant definitions:

**Active Employment** or **Actively Employed** means Actively Working on a regular and consistent basis for the Policyholder 30 or more hours each week. A Disabled Employee will not be considered actively employed.

**Actively Working** or **Active Work** means performing the normal duties of a regular job for the Policyholder at:

    (a)    the Policyholder's usual place of business;

    (b)    an alternative work site at the direction of the Policyholder; or

    (c)    a location to which one must travel to perform the job.

An Employee will be considered actively working on any day that is:

    (a)    a regular paid holiday or day of vacation; or

    (b)    a regular or scheduled non-working day;

provided the Employee was actively working on the last preceding regular work day.

AR 81.

The LTD Policy provides that:

Your insurance will end at midnight . . . on the earliest of:

    (a)    the day this Policy ends:

    (b)    the day any premium contribution for Your insurance is due and unpaid:

. . .

(d)    the day You are no longer eligible. You will no longer be eligible when the earliest of the following occurs:

    (1)    You are not in an eligible classification described in the Schedule;

    (2)    Your employment with the Policyholder ends;

    (3)    You are not Actively Employed; or

    (4)    You do not satisfy any other eligibility condition described in this Policy.

We will provide benefits for a payable claim which occurs while You are covered under this Policy.

AR 83.

The LTD Policy provides for the continuation of insurance during disability, stating, "If You become Disabled, Your insurance will continue without payment of premium for as long as You are entitled to receive Monthly Benefits" Id. In addition, the LTD Policy provides continuation of insurance under the Family and Medical Leave Act of 1993 (FMLA). The LTD Policy refers the employee to the employer for additional information regarding continued coverage. Id.

The LTD Policy also has a pre-existing conditions provision:

We will not provide benefits for Disability:

    (a)    caused by, contributed to by, or resulting from a Preexisting Condition; and

    (b)    which begins in the first 12 months after You are continuously insured under this Policy.

A Pre-existing Condition means any Injury or Sickness for which You received medical treatment, advice or consultation, care or services including diagnostic measures, or had drugs or medicines prescribed or taken in the 3 months prior to the day You become insured under this Policy.

AR 85.

## B. Johnson's First STD Claim

On March 31, 2011, Johnson's 13-year-old son died in a tragic accident. AR 284. On

April 25, 2011, Johnson was seen by Dr. Jason Byers, an M.D. at Allina's Coon Rapids Family

Practice.  Dr. Byers spent the "[e]ntire office visit counseling" Johnson regarding her son's death

and her struggles with "the holidays, family, finances."  Dr. Byers also noted, "No meds

discussed or asked for.  I did place a referral for MH [mental health] counseling and gave her

resources to look into."  Id.  On April 28, 2011, Dr. Byers signed an attending physician

statement that Johnson should not return to her employment from May 2, 2011, through June 2,

2011.  AR 335-36.  Johnson worked on May 2, 2011, but did not work again until June 21, 2011.

On May 2, 2011, Johnson filed for STD benefits.  On June 28, 2011, United employee

Sadie Burr reviewed Johnson's initial STD claim.  AR 774.  In that review Burr concluded that:

> She [Johnson] wanted to take a break from work.  This is understandable, but it's not
> clear that she suffered from a significant change in mental functioning.  She worked
> for another week, as her last date worked was 05/02/11.  Why was she able to do
> this?  No medications were given and no follow up set.  This doesn't seem consistent
> with a severe psychiatric impairment.  She was referred for counseling; did she go?
> If so that information would need [sic] gathered for review.  If not, she wouldn't be
> under the appropriate care & treatment as directed by her provider.  Moreover, if she
> didn't go, this one record would not be sufficient to support that she was suffering
> from a psychiatric impairment that would preclude her ability to work from 05/02/11
> to her projected return date of 06/20/11.

AR 774.  On June 30, 2011 Julie Shahan, another United employee, completed another review of

Johnson's STD claim.  AR 776.  Shahan noted that she had a telephone conversation with

Johnson confirming that she had not seen any other doctors and:

> Has been having counseling w/her pastor.  States she visits with her pastor daily for
> support.  States this is not something a doctor can help you with or fix for you.  It is
> internal and you just need someone to listen to you, give you hug [sic] & support.
> That is what her pastor does.  Also stated that she saw Dr. Byers 04/25 then the
> doctor would call her ever [sic] couple of days to check on her and talk with her or
> the nurse would call and visit with her.

AR 776-77.  On August 17, 2011, Shahan wrote Johnson to inform her that her STD claim was

denied.  AR 207-09.  Shahan's letter explained her review of Johnson's application, Johnson's

medical record dated April 25, 2011 from Dr. Byers, and Johnson's medical record dated June

17, 2011 from Dr. Mayra Oberto-Medina, D.O.  Dr. Oberto-Medina prescribed Prozac to assist

Johnson in coping with "severe stress."  AR 224-25.  The Shahan denial letter concluded:

> You were given a referral for mental health counseling.  However, the record does
> not provide documentation of intensive treatment and the psychological evaluation
> provided does not indicate the severity of your symptoms.  Based on the information
> provided, you did not attend mental health counseling as recommended and did not
> receive appropriate care and treatment which is consistent with the diagnosis of your
> condition.
>
> . . .
>
> In summary, the documentation does not support an impairment that would preclude
> you from performing the material duties of your job as a territory manager.
> Therefore, no benefits are payable and your claim has been denied.

AR 208.

Johnson appealed the denial of her STD claim and on October 20, 2011, Molly Kuehl of

United wrote Johnson to advise her that her appeal had also been denied.  AR 201-04.  Kuehl's

letter explained:

> Ms. Johnson, it is understandable that you wanted time off work.  But, there is no
> evidence of a significant change in your mental functional capacity that occurred on
> or around your date last worked.  You saw Dr. Byers on April 25, 2011, but
> continued to work through May 2, 2011.  There was no followup appointment set,
> which is not consistent with a severe psychiatric impairment.  We realize that you
> were seeing your pastor, but, that does not constitute appropriate care and treatment
> as defined under your policy.
>
> There is no medical evidence of an impairment that would preclude you from
> performing the material duties of your job as of May 3, 2011.
>
> In summary, the medical information does not document a significant change in your
> mental or physical functional capacity on or around your date last worked.  You were
> also not receiving appropriate care and treatment, as defined under your policy.
> Therefore, no benefits are payable and your claim has been denied.

7

. . .

At this time, you have exhausted all administrative rights to appeal.  United of Omaha Life Insurance Company will conduct no further review of your claim and your claim will be closed.

AR 202-203.

## C.  Johnson's Second STD Claim

Johnson worked 40 hours per week from June 21, 2011, through November 30, 2011. AR 627-40.  On November 23, 2011, Johnson had an appointment with Sheila Forbes from Family Based Therapy Associates.  AR 133.  In her clinical note from that session Forbes recorded Johnson was seeking therapy to help her with symptoms of depression, mainly from the death of her son.  Forbes recommended that Johnson follow-up with Dr. Byers.  AR 133.  On December 1, 2011, Johnson saw Dr. Byers again.  AR 168.  As a result of this visit, Dr. Byers wrote a letter asking that Johnson be off work for a month.  He also prescribed some medication. AR 168, 193-195.  Johnson met with Forbes again on December 7, 2011, and December 14, 2011.  AR 134-35.  On December 8, 2011, Johnson saw Dr. Gary Beaver, a licensed psychologist at Family Based Therapy Associates, for instruction on EMDR (Eye Movement Desensitization and Reprocessing, a treatment for PTSD).  AR 144.  Johnson saw Dr. Beaver on at least 8 occasions.  AR 136-43.

On May 4, 2012, after reviewing the medical records submitted by Johnson, United determined that for the period from December 1, 2011, through January 8, 2012, Johnson should be granted STD benefits.  AR 786-87.

## D.  Johnson's LTD Claim

Johnson went back to work after January 8, 2012, but continued working only until February 17, 2012.  On February 20, 2012, Dr. Beaver recommended that Johnson take an

immediate medical leave of absence.  AR 495.  Johnson continued treatment with Dr. Beaver and also received psychiatric care from Dr. Marilyn Janzen.  AR 395-97, 440-46.  It is uncontested that LANDesk could no longer hold Johnson's position open for her; therefore, United terminated Johnson's employment on March 5, 2012.  AR 568.

On May 4, 2012, United received Johnson's application for LTD benefits.  AR 615.  United requested certain records from LANDesk, including her job description, her earning statements from December 1, 2010, through November 20, 2011, time cards/attendance records from May 1, 2011, through December 1, 2011, and the "Employee's status May 2, 2011 to June 30, 2011."  AR 616.

LANDesk replied to United by e-mail.  LANDesk explained, "the attendance [card] does not record LWOP [Leave Without Pay] hours when people are on LOA [Leave of Absence]. . . . LOA hours are not recorded at all.  It simply shows a date internally with the start and return dates of LOA.  Otherwise the only indicator is the lack of pay."  AR 617.  The email also states that Johnson's "status" from May 2, 2011 to June 30, 2011 was: "May 2 - active"; "May 3 through June 20 - inactive"; and "June 21 to June 30 - active."  Id.

United concluded that Johnson was not "actively employed" by LANDesk in May and June 2011, and since she was treated for stress, anxiety, and depression related to the death of her son during that period, she had a pre-existing condition when she regained her LTD insurance on June 21, 2011.

On August 27, 2012 United sent Johnson a letter denying her application for LTD stating:

> The information provided by the LANDesk Human Relations Department on May 23, 2012, indicates your status from May 14, 2011 through June 20, 2011 was

inactive.  During the period of May 24, 2011 through June 20, 2011, you were not eligible for Family Medical Leave nor were you in a vacation or sick leave status with your employer.  Per the policy, as described above, during this time period, you did not meet the definition of actively Working or Active Work, nor did you meet the definition of Active Employment or Actively Employed.  Thus, during the period May 24, 2011 through June 20, 2011, you were not covered under the Long-Term Disability policy, as defined by the policy provisions under When Your Benefits End.

On June 21, 2011, your benefits were reinstated when you returned to work in a full-time work status with your employer.  When this occurred, The Preexisting Conditions provisions applied from the date your benefits were reinstated.

According to the information in file, your coverage effective date under the Reinstatement of Insurance provision occurred on June 21, 2011.  You are claiming disability beginning December 1, 2012, for Adjustment Disorder with Depressed Mood.  Since your date of disability occurred within 12 months of your coverage effective date, your claim was subject to a Preexisting Conditions review.  For the Pre-existing Conditions review, we obtained your medical records to determine if you were treated within the three months prior to the date your coverage became effective.  The preexisting period for your claim under this policy is March 21, 2011 to June 21, 2011.

On April 25, 2011, during your office visit with Dr. Byers, Family Practice, you were referred for mental health counseling. Dr. Byers also wrote you a letter for one month, or shorter, off from work.

In summary, due to your inactive status during the time period May 24, 2011 through June 20, 2011, you were not eligible for Long-Term Disability benefits.  Your benefits were restated [sic] on June 21, 2011, when you returned to full-time work status, however, you were subject to the Preexisting Conditions provision of your policy.  A Pre-existing Condition investigation determined you received medical consultation, advice and treatment during the three months prior to your effective date of coverage as defined by your policy.  Therefore, no benefits are payable, and your claim has been denied.

AR 611- 12.  Johnson appealed, arguing that despite the denial of STD benefits, she was still on

work-approved sick leave and that the LTD policy did not lapse.  When she was asked in a

phone interview about her treatment in May and June 2011, Johnson responded that she saw Dr.

Byers on April 25, 2011 and that he and his nurses checked in on her every couple of days.  AR

776-77.  Johnson submitted several documents to United that she did not submit for either her

first STD claim or her first STD claim appeal.  Among those documents was one in which Dr.

Byers reported Johnson was under his care from April 2011 until May 2013 and that he

recommended no work in May and June 2011.  Dr. Byers also noted that he "initially scheduled

her to see the counselors at Northtown Counseling, [but] she sought out her own therapy

program, which [Dr. Byers] approved of."  AR 540, 542.  Dr. Byers scheduled an appointment

for May 25, 2011, which Johnson claims she attended.  AR 312, 335; Pl.'s Reply [Docket No.

31] 2.  And, in a separate report, Dr. Byers extended Johnson's "work leave through June 20th."

AR 312.  LANDesk viewed Johnson's time off of work as an approved "leave of absence."  AR

568.

On June 14, 2013, United denied Johnson's appeal.  United reported that it did not review

the medical files in the appeal "because the adverse determination was based on eligibility."  AR

535-36.  This action was commenced on July 1, 2013.  See Compl. [Docket No. 1].

### III.  DISCUSSION

**A.  Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall

be granted if there exists no genuine issue as to any material fact and the moving party is entitled

to judgment as a matter of law.  On a motion for summary judgment, the court views the

evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465,

470 (8th Cir. 1995).  However, the nonmoving party may not "rest on mere allegations or

denials, but must demonstrate on the record the existence of specific facts which create a genuine

issue for trial."  Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995) (citations omitted).

If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving

party has been presented, summary judgment is inappropriate.  Id.  However, "the mere

existence of some alleged factual dispute between the parties is not sufficient by itself to deny

summary judgment. . . . Instead, 'the dispute must be outcome determinative under prevailing

law.'"  Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citations omitted).

**B.  ERISA Standard of Review**

A plan beneficiary challenging the denial of benefits under 29 U.S.C. § 1132(a)(1)(B) is

entitled to de novo review of his claim "unless the benefit plan gives the administrator or

fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of

the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Because it is

"relatively easy for an insurer to use unambiguous discretion-conferring language," when an

insurance policy uses ambiguous claims submission language, "the presumption should be there

was no intent to confer such discretion."  Walke v. Grp. Long Term Disability Ins., 256 F.3d

835, 840 (8th Cir. 2001).  Only "explicit discretion-granting language" will trigger the

deferential standard of review.  Hankins v. Standard Ins. Co., 677 F.3d 830, 835 (8th Cir. 2012).

In this case, the parties agree that the applicable standard of review based on the Policies'

language is abuse of discretion.  The policies grant United the authority to interpret the Policies,

stating:

> The Policyholder [LANDesk] has delegated to Us [United] the discretion to
> determine eligibility for benefits and to construe and interpret all terms and
> provisions of the Policy. Benefits under the Policy will be paid only if We [United]
> decide, after exercising Our discretion, that the Insured Person is entitled to them. In
> making any decision, We may rely on the accuracy and completeness of any
> information furnished by the Policyholder, an Insured Person or any other third
> parties.

AR 6, 42, 57.

The abuse of discretion standard requires a reviewing court to defer to the ERISA plan administrator's decision, but it "is not tantamount to rubber-stamping the result." Torres v. UNUM Life Ins. Co. of Am., 405 F.3d 670, 681 (8th Cir. 2005).  The reviewing court must determine whether the disability determination is reasonable, "which requires that it be supported by substantial evidence that is assessed by its quality and quantity." Id. (citations omitted).  Courts have defined "substantial" evidence as "more than a scintilla but less than a preponderance." Schatz v. Mut. of Omaha Ins. Co., 220 F.3d 944, 950 (8th Cir. 2000).  The Eighth Circuit has also held that "reasonable" means a "reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." Ferrari v. Teachers Ins. and Annuity Ass'n, 278 F.3d 801, 807 (8th Cir. 2002) (quoting Donaho v. FMC Corp., 74 F.3d 894, 898 n.5 (8th Cir. 1996))(emphasis in the original).

Eighth Circuit courts consider five factors when reviewing an ERISA benefits decision for abuse of discretion: (1) whether the administrator's interpretation is consistent with the goals of the Plan; (2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent; (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the administrator has interpreted the relevant terms consistently; and (5) whether the interpretation is contrary to the clear language of the Plan. Shelton v. ContiGroup Co., 285 F.3d 640, 643 (8th Cir. 2002); Finley v. Special Agents Mutual Benefit Ass'n, 957 F.2d 617, 621 (8th Cir. 1992); Olsen v. Std. Ins. Co., No. 13-576, 2014 U.S. Dist. LEXIS 115837, *18 (D. Minn. Aug. 20, 2014) (citing the "Finley factors").

13

Neither party explicitly applies the five factors test in their analysis. Instead, their summary judgment arguments focus on the interpretation of the plain language of the policies, essentially the fifth Finley factor.

## C.  STD Policy

"In conducting a review of the reasonableness of a benefits decision under the abuse of discretion standard, the Court normally is confined to review the information before the administrator at the time of the claim decision." Davidson v. Wal-Mart Assocs. Health & Welfare Plan, 305 F. Supp. 2d 1059, 1082 (S.D. Iowa 2004) (citing Schatz, 220 F.3d at 949 and Ferrari, 278 F.3d at 807); see also Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1199 (8th Cir. 2002) ("A plan administrator's decision is reasonable if a reasonable person could have, based upon the same evidence, reached a similar decision.").

The facts before the plan administrators on Johnson's first STD claim, and on appeal, were relatively sparse.[3] For the initial review, Burr spoke to Johnson and discovered that

---

[3] Where the plan administrator is also the insurance company which ultimately pays benefits, an inherent conflict of interest exists. Carr v. Anheuser-Busch Cos., 495 F. App'x 757, 763 (8th Cir. 2012) (citing Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008)). The conflict of interest does not change the standard of review, but rather is a factor to consider in determining whether there is an abuse of discretion. Hackett v. Std. Ins. Co., 559 F.3d 825, 830 (8th Cir. 2009). "Where an insurer has a history of biased claims administration, the conflict may be given substantial weight, but where the insurer has taken steps to reduce the risk that the conflict will affect eligibility determinations, the conflict should be given much less weight." Darvell v. Life Ins. Co. of N. Am., 597 F.3d 929, 934 (8th Cir. 2010); see also McDonel v. Hartford Life & Accident Ins. Co., No. 10-4510, 2012 U.S. Dist. LEXIS 87692, 21-22 (D. Minn. June 25, 2012). In this action, the investigator and the appeal specialist both worked for United. Although Johnson mentioned this fact in its opposition to Defendant's motion for summary judgment, there is no evidence in the record of biased claims administration history. In addition, there is some evidence that United takes steps to segregate its claims reviewers from the rest of the company and that United does not offer incentives or penalties to its reviewers based on the denial or approval of claims. AR 203, 536. Accordingly, the alleged conflict is given little weight.

Johnson, after seeing Dr. Byers on April 25, 2011, decided not to seek professional mental health counseling and disavowed seeing a doctor for further treatment. Johnson also worked until May 2, 2011, several days after seeing Dr. Byers. While Johnson told Burr that Dr. Byers and his nurses called her to follow-up, those conversations were not reflected in any of Dr. Byers' medical records. Consistent with the terms of the STD Policy, Burr could have reasonably concluded that Johnson was not under appropriate care and treatment or disabled because appropriate care and treatment required Johnson see a licensed professional and further, disability was defined in the policy as being too disabled to work. When Shahan reviewed the medical record from Dr. Byers dated April 25, 2011, she noted a referral for mental health services, but Johnson did not follow through with the medical referral. Instead, Johnson chose to see her pastor. There was no evidence before Shahan that Johnson's pastor was an MD, DO, DPM, DC, or licensed clinical psychologist or licensed practitioner as required by the STD policy's definition of a "Physician." At the very end of her leave of absence, four or five days before returning to work, Johnson sought medical attention again, but not from Dr. Byers. United argues that this medical consult merely concerned Johnson's complaints about arthritis, which is reflected in most of the medical notes focus of the visit. Johnson claims this visit was caused by her stress and anxiety reaction to the death of her son and was part of her ongoing treatment for that stress. Although Johnson was prescribed Prozac at this doctor's visit, and although Johnson now argues that this doctor's visit was about mental health more than arthritis, Johnson provided no evidence on the record at the time of the decision that this visit related to treatment for her mental health. For example, there was no evidence that she filled the prescription and no further evidence that the second doctor's visit was related to the first.

Shahan's conclusion that between May 2, 2011 and June 21, 2011, Johnson was not under

appropriate care or receiving appropriate treatment as defined by the terms of the STD Policy

was reasonable.

United's denial letter "encouraged [Johnson] to submit any additional medical records

that may be available to support your appeal. Medical records may include, but are not limited

to: treatment notes, test results, consultation records, therapy notes, etc."[4]  AR 208.  When

Johnson appealed the initial denial, she submitted a letter from Dr. Byers which stated that there

were no "clinical documents proving her mental health counseling although steps were taken."

AR 210.  The record does not show any further documents provided for the appeal.  Kuehl, who

reviewed the appeal, concluded that the initial review was reasonable and that Dr. Byers did not

show a disability that would prevent Johnson from completing the material duties of her job.

Therefore, United denied Johnson's appeal.  Johnson now criticizes United for not following up

with Dr. Byers, but a reasonable reviewer of the record could have concluded that further follow

up was unnecessary.

For these reasons, United is entitled under the abuse of discretion standard of review to

summary judgment as to its STD Policy decision.  An independent look at the remaining Finley

factors does not change the Court's opinion.  The administrators' interpretation appears

consistent with the goals of the Plan; the interpretation does not render any language in the Plan

meaningless or internally inconsistent; the administrators' interpretation does not conflict with

---

[4]  See 29 C.F.R. § 2560.503-1(g)(iii) (requiring administrators to notify the claimant of "any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary"); Chorosevic v. MetLife Choices, 600 F.3d 934, 944 (8th Cir. 2010).

the substantive or procedural requirements of the ERISA statute; and there is no evidence on the record that the administrator has interpreted the relevant terms inconsistently.

**D.  LTD Policy**

United denied Johnson's LTD claim for a cascading set of reasons.  See AR 535-36. First, it determined that Johnson stopped working from May 24, 2011 to June 21, 2011 because LANDesk was not paying her for this time.  Johnson had exhausted her paid vacation and paid sick leave time and she did not claim FMLA leave.  United concluded, therefore, that Johnson was not "actively employed."  Then, recognizing its own denial of STD benefits for that period, it determined that Johnson was not disabled.  Therefore, Johnson was not covered by the LTD Policy's "continued coverage" provisions.  Finally, Johnson was treated for her mental health condition (even though United did not believe she was disabled) and United could consider her mental health issues as a pre-existing condition.  Since Johnson was not "actively working" and had been "sick" (but not sick enough for STD benefits) during her "inactive" time, United reasoned Johnson was not entitled to LTD benefits.

United's denial was an abuse of discretion.  United failed to consider evidence that, notwithstanding its reasonable denial of STD benefits, Johnson was entitled to continued coverage based on disability from May 3, 2011 to June 21, 2011.  In addition, United's analysis of the LTD Policy language was unreasonable.

United reported that it did not review the medical files in the LTD Policy decision appeal "because the adverse determination was based on eligibility."  AR 536.  This is evidence that United denied coverage without considering Johnson's medical file based on its previous denial

of STD benefits.[5]  Therefore, United did not consider Dr. Byers' May 2013 letter and other

evidence.  In the letter, Dr. Byers wrote that he approved of Johnson's switch from mental health

counseling to pastoral care and that Johnson was under his and his nurses' continuous care.  It is

not clear whether United considered that Dr. Byers scheduled a counselling appointment for May

25, 2011, which Johnson claims she attended.  Dr. Byers also felt Johnson's condition warranted

extending her work leave through June 20th.  Finally, LANDesk attested to and clarified that it

viewed Johnson's time off of work as an approved "leave of absence."  Relying heavily on its

STD benefits determination, United failed to review Johnson's case fully and fairly, and jumped

to the conclusion Johnson was not entitled to continuation of coverage.  As with the STD Policy

above, the administrator must consider all the evidence in the record.  It was therefore an abuse

of discretion for United to conflate its first STD Policy denial with its LTD Policy decision.

       In addition, when a plan participant is requesting an ERISA plan benefit, the burden of

proof is generally on the plan participant.  Ringwald v. Prudential Ins. Co. of Am., 754 F. Supp.

2d 1047, 1056 (E.D. Mo. 2010).  But, when a plan administrator is imposing an exclusion, like

the pre-existing conditions exclusion in this case, the burden is usually on the plan administrator

to prove that the exclusion applies.  Id.  Here, United cannot show that the exclusion applies to

warrant summary judgment because it did not fully review the evidence.  Had United considered

the second submission of documents, the evidence may have shown Johnson was under the

---

[5] Although the evidence on the record before the plan administrators does not call into
question their STD benefits decision, both Burr and Shahan may have been considering a
higher standard of care than was required for an affirmative benefits decision.  Burr stated that
Johnson's condition did not seem consistent with a "severe psychiatric impairment" and Shahan
stated that Johnson had not provided documentation of "intensive treatment."  Neither standard
is reflected in the language of the STD Policy.

appropriate care of a physician, Dr. Byers, whose care was consistent with the diagnosis of Johnson's condition. Or the evidence may have shown that Johnson was on approved, "scheduled" leave that did not warrant dropping her coverage.

Assuming United considered all evidence of record and still concluded Johnson was not entitled to continued coverage because she was not disabled, United's plain language interpretation of the LTD Policy—the second basis for denial—is unreasonable. According to the LTD Policy, "active employment" requires an individual work "on a regular and consistent basis for the Policyholder 30 or more hours each week." United's interpretation of the policy language is that Johnson's coverage ended when her paid leave ended and when she did not complete a work week of 30 hours.[6] Under this construction, United argues Johnson ran out of paid leave on May 24, 2011 and was not actively employed again until June 21, 2011. Under this interpretation, it would stand to reason that an employee who took an unpaid day off from work, such that his hours fell below 30, would be in danger of losing his coverage. This interpretation is not compatible with the words "regular" and "consistent" at the beginning of the provision.[7] "Regular" and "consistent" imply a broader analysis of an employee's habits. No

---

[6] United came to this conclusion despite receiving LANDesk's premium payments for Johnson's LTD Policy during that period. It does not appear from the record that United has any policy of informing LANDesk, or its employees, of when they have lost their coverage and are vulnerable to the pre-existing condition exclusion. This information would bear on an employer or employee's decision whether to continue to participate in the program. See 29 U.S.C. § 1104(a)(1); 29 C.F.R. § 2520.102-3(1).

[7] United argues that an employee is considered to be actively working on any day that is a "regular paid holiday or day of vacation" or "a regular or scheduled non-working day," which it interpreted to mean paid-time-off and paid holiday time, but this argument fails for the same reason as above. United does not consider that "regular" and "scheduled non-working" days could be leave of absence days approved by the employer on the recommendation of a doctor. Having not considered these possibilities, United's interpretation of the LTD Policy is not

such analysis was conducted here.  Therefore, United abused its discretion by not considering these words in interpreting the plain language of the LTD Policy.

There is no evidence on the record as to what a "regular" or "consistent" employee is.[8] Semmingly, Johnson was a regular and consistent employee because she worked forty hours a week until her son's accident, and after her approved leave she once again worked forty hours a week until her doctors recommended she take a leave of absence.  See, e.g., Granite v. Guardian Life Ins. Co. of Am., 544 F. Supp. 2d 833, 847-848 (D. Minn. 2008); Jones v. Unum Provident Corp., 596 F.3d 433, 436 (8th Cir. 2010) (speculating that coverage would continue for a full-time employee who is reduced to part-time work during a medical leave).  One would expect to see evidence of unapproved leave or disciplinary actions from the employer, or warnings of terminated benefits from the plan administrator when employees were considered irregular or inconsistent.  On the other hand, Johnson has also not presented evidence of how the LTD Policy should interpret or has interpreted "regular" and "consistent."  Since no such evidence has been presented, summary judgment is not warranted for either party.

**E.  Remedy**

Although the Court has determined that United abused its discretion as to its long-term

reasonable.

[8]  United briefly argues that it relied on LANDesk's designation of Johnson as "inactive" for its determination, but if this is the case, then United would have marked Johnson's ineligibility from May 3, 2011.  Clearly, United did not rely on LANDesk's description of "inactive" and "active" in its determination, since it did not mark her "inactive" until May 24.  Nor should it.  As LANDesk's human resources department tried to explain in its correspondence with United, its designations only recorded a leave of absence or day off, it did not indicate what kind of leave.  And its time card/attendance records only recorded paid and unpaid time, it too did not indicate approved and unapproved absences.

disability decision, it notes that United has not analyzed the evidence in the record to determine

if Johnson is entitled to LTD benefits.  Without information about what is considered a regular

and consistent employee, the Court will not speculate further on Johnson's entitlement to LTD

benefits.  The Court may not gather additional evidence outside of the claim file.  Brown v. Seitz

Foods, Inc., 140 F.3d 1198, 1200 (8th Cir. 1998).  Accordingly, this case is remanded to United

for further administrative review consistent with this opinion.  See, e.g., Shelby Cnty. Health

Care Corp. v. Majestic Star Casino, 581 F.3d 355, 373 (6th Cir. 2009) ("[A]n incomplete factual

record provides a basis to remand the case to the plan administrator.").

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1.      Plaintiff Carol R. Johnson's Motion for Summary Judgment [Docket No. 23] is **DENIED without prejudice**.

2.      Defendant Mutual of Omaha Life Insurance Company's Motion for Summary Judgment [Docket No. 17] is **GRANTED in part, and DENIED in part**.

   a.      Plaintiff's short-term disability benefits claim is **DISMISSED**;

   b.      Plaintiff's long-term disability benefits claim is **REMANDED** to Defendant for further administrative review consistent with this opinion.

   c.      The Parties will contact Magistrate Judge Steven E. Rau within 20 days to modify the Pretrial Scheduling Order [Docket No. 10].

                    BY THE COURT:


                    _____s/Ann D. Montgomery_____
                    ANN D. MONTGOMERY
                    U.S. DISTRICT JUDGE

Dated:  September 10, 2014.